UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SCOTT E. , | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:21-cv-00110-JAW |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability (SSD) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing past relevant work as an acid maker and, in the alternative, performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the ALJ erred in relying on the opinions of two agency nonexamining consultants, Mary Alyce Burkhart, Ph.D., and Brian Stahl, Ph.D., without addressing those opinions' internal inconsistencies, and (ii) the appointment of Andrew Saul as the commissioner of Social Security violated the Separation of Powers clause of Article II of the U.S. Constitution, warranting remand for a new hearing in this case. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-11. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2023, Finding 1, Record at 38; that he had the severe impairments of right chondromalacia patella and post-traumatic stress disorder (PTSD), Finding 3, *id.*; that he had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he could frequently balance and climb ramps or stairs, could occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds, could not work at unprotected heights or on slippery surfaces, and was able to interact with co-workers and supervisors but could not tolerate interaction with the public, Finding 5, *id.* at 41; that he was capable of performing past relevant work as an acid maker, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 46; that, in the alternative, considering his age (52 years old, defined as an individual closely approaching advanced age, on his alleged disability onset date, January 1, 2019), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id.* at 46-47; and that he, therefore, had not been disabled from January 1, 2019, his alleged onset date of disability, through the date of the decision, November 4, 2020, Finding 7, *id.* at 47. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981, 416.1481; *Dupuis v. Sec'y of Health & Hum. Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported

by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5, the burden of proof shifts to the commissioner to show that a claimant can perform work other than any past relevant work. 20 C.F.R. § 404.1520(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Hum. Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Challenge to ALJ's Decision

On initial review of the plaintiff's application for disability benefits, Dr. Burkhart deemed his PTSD severe, finding, pursuant to the so-called "Paragraph B criteria" – the "four broad [mental] functional areas" pursuant to which the severity of medically determinable mental impairments is gauged, 20 C.F.R. § 404.1520a(c)(3)-(4) – that he had only mild limitations in his abilities in three of those areas (understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage himself) but had a moderate limitation in the fourth, his ability to interact with others. Record at 95. She then assessed the plaintiff's mental RFC,

3

concluding, in relevant part, that he was "able to interact with coworkers and supervisors, but based on his report of irritability dealing with others[,] no public contact[.]" *Id*. at 97. On reconsideration, Dr. Stahl made identical Paragraph B findings and assessed the same mental RFC, although he elaborated, with respect to his RFC finding:

> [C]laimant's last job was an advocate for other veterans. Treatment notes indicate he is generally supportive to family. Shops. [A]ppears to have made a connection to therapist.

*Id*. at 102, 106.

The ALJ deemed the Burkhart and Stahl opinions "persuasive, as they are consistent with and supported by the objective treatment as a whole, and in particular the counseling records of Dr. Agee [John Agee, Ph.D., the plaintiff's treating therapist] and the [plaintiff]'s report that this treatment has been immensely helpful." *Id*. at 43-44 (citations omitted). He incorporated their opinions into his own RFC determination, deeming the plaintiff "able to interact with coworkers and supervisors, but cannot tolerate interaction with the public." Finding 5, *id*. at 41.

The plaintiff contends that, in so doing, the ALJ failed to resolve internal inconsistencies in the sub-findings (Section I ratings) made by Drs. Burkhart and Stahl in assessing his RFC (Section III narratives). *See* Statement of Errors at 4-8. Specifically, he notes, the ALJ failed to acknowledge Dr. Burkhart's assessment that he was "Moderately Limited" in his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes" (a sub-finding within the category "Social Interaction Limitation") and Dr. Stahl's assessment that he was "Moderately Limited" not only in that ability but also in his "ability to accept instructions and respond appropriately to criticism from supervisors" (another sub-finding within the category "Social Interaction Limitation"). *Id*. at 5; Record at 97, 106.

4

The plaintiff points out that the agency's Program Operations Manual System (POMS) explains that the phrase "Moderately Limited" should be used "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired[,]" directing that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III[,]" which is where "the actual mental RFC is recorded[.]" Statement of Errors at 5-6; POMS §§ DI 24510.063(B)(2), 24510.060(B)(4)(a) (emphasis omitted).

He contends that Drs. Burkhart and Stahl failed either to include limitations reflecting his moderate difficulties with co-workers or supervisors in their RFC opinions or explain the omission of any such limitations, creating an internal tension that the ALJ failed to resolve. *See* Statement of Errors at 6-8. He asserts that this, in turn, undermined the ALJ's conclusion that the Burkhart and Stahl opinions were persuasive pursuant to 20 C.F.R. § 404.1520c, which emphasizes the importance of opinions' supportability and consistency. *See id*. at 6-7; Record at 44; 20 C.F.R. § 404.1520c(b)(2) (supportability and consistency "are the most important factors" considered in determining the persuasiveness of a medical source's opinion). He cites *Lindsey v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00038-JAW, 2011 WL 86567, at *7 (D. Me. Jan. 10, 2011) (rec. dec., *aff'd* Feb. 28, 2011), and *Bard v. Soc. Sec. Admin. Comm'r*, 736 F. Supp. 2d. 270, 277-78 (D. Me. 2010), for the proposition that "the opinions here were too 'telegraphic' to be validly relied upon[,]" warranting remand. Statement of Errors at 7 (quoting *Lindsey*, 2011 WL 86567, at *7). At oral argument, his counsel also cited *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997 (D. Me. Sept. 19, 2016), in support of that proposition. I am unpersuaded.

As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 2-3, the plaintiff overlooks explanations provided by Drs. Burkhart and Stahl for their findings and by the ALJ for his. Dr. Burkhart noted

that the plaintiff had declined to undergo a consultative examination, that his treatment records from the U.S. Department of Veterans Affairs did not indicate ongoing issues with PTSD, and, most importantly, that his own counselor, Dr. Agee, had indicated that he could sustain work with limited public interaction.  *See* Record at 95, 458 (October 9, 2019, Agee statement that, "Regarding [the plaintiff]'s ability to work on a sustained basis, it seems that he would only be successful if he were in a very low stress job with limited interactions with the public."). Dr. Stahl provided the additional explanation, in assessing the plaintiff's mental RFC, that the plaintiff was generally supportive of family, could shop, and appeared to have connected with his therapist.  *See id*. at 106.

For his part, the ALJ explained, in finding pursuant to the Paragraph B criteria that the plaintiff had a moderate limitation overall in interacting with others:

> [The plaintiff] states that most people irritate him and he does not like crowds of people.  The [plaintiff] has never been fired or laid off from a job because of problems getting along with other people, but he states that he does not get along well with authority figures.  Physical treatment records describe the [plaintiff] as having an appropriate mood and affect.  However, they do note that [he] reported difficulty at a restaurant after being seated next to a large crowd.  The record as a whole supports a moderate limitation in this area of functioning, which has been accommodated in the [RFC] statement below.

*Id*. at 40 (citations omitted).  The ALJ further explained, in assessing the plaintiff's RFC, that the plaintiff had found outpatient therapy "'very helpful' and expressed disappointment that many other veterans do not get help due to the stigma" and that, as his treatment progressed, "it was noted that [he] had continued symptoms of PTSD but that he was more aware of his triggers and . . . able to use thought exercises and coping mechanisms to help manage triggering situations, such as shopping in Walmart."  *Id*. at 43 (citations omitted).[3]

---

[3] Of note, the regulations define "consistency" with reference to other evidence of record, stating, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

6

*Parker, Lindsey,* and *Bard* are distinguishable.  In *Parker* and *Lindsey*, the agency nonexamining consultants on whose opinions ALJs had relied had not adequately explained the seeming disappearance of sub-findings from their RFC narratives, nor had the ALJs addressed the issue, s*ee Parker,* 2016 WL 4994997, at *5-6; *Lindsey*, 2011 WL 86567, at *6.  In any event, even if no explanations had been provided in this case by either the consultants or the ALJ, this court has rebuffed the argument that this error in itself is fatal, observing that in both *Parker* and *Lindsey* several errors collectively tipped the scales toward remand, s*ee, e.g.*, *Russell B. v. Berryhill*, No. 1:17-cv-00418-JHR, 2018 WL 5258615, at *4-5 (D. Me. Oct. 21, 2018); *Jesse W. v. Kijakazi*, No. 2:20-cv-00358-DBH, 2021 WL 4060138, at *3 (D. Me. Sept. 5, 2021) (rec. dec., *aff'd* Sept. 22, 2021).  *Bard* is distinguishable in that, absent any expert assessment, the ALJ construed raw medical evidence to assess the claimant's mental RFC.  *See Bard*, 736 F. Supp. 2d at 276-77.

Remand, accordingly, is unwarranted on the basis of the ALJ's handling of the opinion evidence.

### B.  Constitutional Challenge

The scope of disagreement between the parties concerning whether remand is required on the basis of the plaintiff's constitutional challenge is narrow.  The commissioner concedes that 42 U.S.C. § 902(a)(3), the statute limiting the President's authority to remove the Presidentially-appointed, Senate-confirmed commissioner of Social Security without good cause, violates the Separation of Powers clause, *see* Opposition at 8, and the plaintiff concedes that pursuant to *Collins v. Yellin*, 141 S. Ct. 1761 (2021), the availability of a remedy depends on whether that constitutional violation inflicted harm, *see* Plaintiff's Reply Memorandum Regarding *Seila Law* and *Collins* ("Reply") (ECF No. 21) at 6; *Collins*, 141 S. Ct. at 1789 (whether petitioners had

---

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

remedy for Separation of Powers violation depended on whether "the unconstitutional provision . . . inflict[ed] compensable harm"). However, the parties disagree as to the nature of the showing of harm required.

The commissioner notes that Justice Kagan construed the majority's approach to entitle a litigant to relief "only when the President's inability to fire an agency head affected the complained-of decision[,]" noting that she doubted that "the mass of SSA [Social Security Administration] decisions – which would not concern the President at all – would need to be undone." Opposition at 13-15 (quoting *Collins*, 141 S. Ct. at 1801-02 (Kagan, J., concurring)).

The plaintiff disputes that *Collins* requires a showing of direct prejudice in these circumstances, arguing that "harm [should] be presumed" because "neither the ALJ nor the Appeals Council . . . had a lawful delegation of authority under which to adjudicate and decide [this] disability claim." Reply at 4. In the alternative, he contends that even if such a showing is required, he surmounts that hurdle with respect to the Appeals Council's denial of his request for review after President Biden assumed office. *See id.* at 6-8; Record at 1 (Appeals Council notice dated February 18, 2021).[4] At oral argument, his counsel cited a passage from *Collins* in which Justice Alito, writing for the majority, stated that the "possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA [Federal Housing Finance Agency] could [inflict compensable harm] cannot be ruled out[,]" explaining:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he

---

[4] The plaintiff also contends that the commissioner waived any defense with respect to the Appeals Council (*versus* the ALJ) by addressing the Appeals Council only in a footnote. *See* Opposition at 8-20 & n.6; Reply at 3. I find no waiver. In his statement of errors, the plaintiff also focused on the ALJ and mentioned the Appeals Council only in passing, indicating (as does the commissioner in his Opposition) that the same analysis applies to both. *See* Statement of Errors at 8-11; Opposition at 14 n.6.

would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Collins*, 141 S. Ct. at 1789.

With that as backdrop, the plaintiff argues that contemporaneous evidence demonstrates that "President Biden wished to terminate Commissioner Saul's appointment upon assuming the Presidency[,]" citing (i) the White House's request for advice from the Department of Justice (DOJ) in the wake of the *Collins* decision as to whether President Biden could fire Commissioner Saul, (ii) the DOJ's issuance of a memorandum opinion confirming that the President could do so, following which the President promptly removed Commissioner Saul from office, and (iii) the White House's statement, on removing Commissioner Saul, that, "'[s]ince taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, . . . reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.'" Reply at 6-7 (footnote omitted).

He asserts that these communications highlight that President Biden (i) removed Commissioner Saul from office because Commissioner Saul had undermined and politicized the Social Security disability benefits process, (ii) believed that since Commissioner Saul took office in 2019, he "had infringed upon the constitutional due process rights of disability benefit applicants such as" the plaintiff, and (iii) refrained from removing Commissioner Saul upon his inauguration only because of the unconstitutional removal restriction. *Id*. at 7-8.

First, *Collins* neither holds nor suggests that compensable harm can be presumed. Rather, as this court recently observed in denying a Social Security claimant's identical bid for relief, a claimant "must establish a 'link' between the adverse action and the unconstitutional tenure-protection provision" to warrant relief pursuant to *Collins*. *Kathy R. v. Kijakazi*, 2:21-cv-00095-JDL, 2022 WL 42916, at *3 (D. Me. Jan. 5, 2022) (rec. dec., *aff'd* Feb. 24, 2022) (citation omitted).

*See also, e.g., Shaun A. v. Comm'r of Soc. Sec.*, Case No. C21-5003-SKV, 2021 WL 5446878, at *5 (W.D. Wash. Nov. 22, 2021), *appeal docketed*, No. 22-35056 (9th Cir. Jan. 20, 2022) ("[T]he removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner.").

Second, as this court held in *Kathy R.*, the evidence on which the plaintiff relies in the alternative falls short of establishing that link:

> The statement upon which Plaintiff relies was attributed to a "White House official" and not the President. In addition, the fact that President Biden removed the Commissioner soon after the DOJ's opinion regarding the applicability of the *Collins* decision to the statute does not necessarily mean President Biden would have removed Commissioner Saul within three weeks of President Biden's inauguration.[5] In this case, the action challenged by Plaintiff is the Appeals Council's denial of review of the ALJ's decision denying benefits, and Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement – or even awareness – by the former or current President in the ALJ's or the Appeals Council's decision.

*Kathy R.*, 2022 WL 42916, at *4 (citation and internal punctuation omitted). *See also, e.g., Sarah H. v. Comm'r of Soc. Sec.*, CASE NO. 3:21-cv-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021) (claimant failed to show compensable harm as required by *Collins* when she had "not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims"); *Shaun A.*, 2021 WL 5446878, at *5 (claimant's "reference to an unnamed White House official's justification for Commissioner Saul's removal[,]" including that "Commissioner Saul was removed from office in part because he had undermined, politicized, and reduced due process protections for benefits appeals hearings," did not "indicate that [the claimant] was harmed") (citation and internal quotation marks omitted).

Remand, accordingly, is unwarranted on the basis of the plaintiff's constitutional argument.

---

[5] The Appeals Council decision at issue in *Kathy R.* was dated February 8, 2021, *see Kathy R.*, 2022 WL 42916, at *4, nearly three weeks after President Biden's January 20, 2021, inauguration. As noted above, the Appeals Council decision at issue here, dated February 18, 2021, *see* Record at 1, also postdates President Biden's inauguration.

10

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of March, 2022.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge